1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANDREW MOAK,                                No.  2:15-cv-0640 MCE KJN P

12              Plaintiff,

13        v.                                     ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14   SACRAMENTO COUNTY,

15              Defendant.

16

17   I.  Introduction

18        Plaintiff is a former Sacramento County Jail inmate, who has now been released from

19   state custody, and is proceeding without counsel.  This civil rights action, filed pursuant to 42

20   U.S.C. § 1983, proceeds on plaintiff's complaint against defendant Sacramento County.

21   Defendant's motion for summary judgment is before the court.  Plaintiff submitted no

22   declarations, affidavits, or other documentary evidence in support of his unverified opposition.

23   As set forth more fully below, the undersigned finds that defendant's motion for summary

24   judgment should be granted.

25   II.  Plaintiff's Complaint

26        In his verified complaint, plaintiff declares that from April 2012, to September 2013,

27   while he was a pretrial detainee housed in the Sacramento County Jail, defendant maintained a

28   policy or custom of allowing a back flushing problem to exist within the plumbing system at the

                                               1

1    jail, and deputies never passed out cleaning supplies to clean the cell after waste water splashed

2    out of the toilets.  Plaintiff alleges that such policy or custom violated plaintiff's Eighth

3    Amendment rights, and claims his situation mirrors the one in Bodnar[1] v. Riverside County

4    Sheriff's Dept., 2014 WL 2737815 (C.D. Cal. March 28, 2014) (denied defendant's motion for

5    summary judgment on prisoner's claim that defendant maintained a custom of allowing a back

6    flushing problem while denying cleaning supplies).

7        Specifically, plaintiff avers that he was housed in cell 207 for four to five months and then

8    cell 218 for the remainder of his housing at the Sacramento County Jail.  Plaintiff claimed that

9    every time the adjoining cell would flush the toilet, raw sewage would [end] up in his toilet and at

10   times, splash on the toilet seat and floor, leaving . . . unsanitary conditions."  (ECF No. 1 at 4.)

11   Plaintiff claims deputies would not give cleaning supplies when requested, and there was not a

12   specific day and time when each cell received cleaning supplies.  (ECF No. 1 at 5.)  Plaintiff

13   declares that he never received any cleaning supplies during his housing at the jail.  (Id.)  Plaintiff

14   contends that jail staff acknowledged the back flushing problem, "but state[d] it's just the way the

15   facility is."  (ECF No. 1 at 6.)

16       Further, plaintiff states that "deputies would not give grievances," for either the cleaning

17   supply or back flushing issues, "stating it's not a grievable issue."  (ECF No. 1 at 5.)  Plaintiff

18   claims he "made oral and written attempts to get the back flushing problem fixed and to receive

19   cleaning supplies," but he "never got any responses."  (ECF No. 1 at 5.)

20   III.  Defendant's Evidentiary Objections

21       Defendant filed evidentiary objections objecting that plaintiff relied on declarations and

22   responses to admissions that were not provided with the opposition, and failed to cite to current

23   evidence in support of his separate statement of undisputed facts.  (ECF No. 52-3.)  The

24   undersigned sustains defendant's objection to plaintiff's reference to, and reliance on,

---

[1]  In his deposition, plaintiff testified that Thomas Bodnar helped plaintiff draft the instant
complaint.  (Pl.'s Dep. at 12, 47.)  Defendant provided a copy of Bodnar's complaint filed in the
Central District.  (ECF No. 43-8.)  Bodnar also assisted plaintiff in the litigation, and drafted a
settlement offer in which plaintiff would share "15 percent of any settlement" proceeds with
Bodnar.  (Pl.'s Dep. at 39, 58, 60-61.)

2

1  declarations from plaintiff, jail detainee Rodriguez, and jail inmate Mr. Mosqueda, as well as

2  defendant's response to admissions because such declarations were not submitted in support of

3  plaintiff's opposition.  The undersigned strikes all references to such declarations and responses,

4  and has not considered such references in addressing the pending motion.  The undersigned does

5  not strike plaintiff's separate statement of undisputed facts that are not supported by citation to

6  evidence in the record, but in those responses where plaintiff relied on these three declarations

7  and defendant's response to admissions, the undersigned deems plaintiff's responses to the

8  statement as undisputed.

9  IV.  <u>Undisputed Facts</u>[2]

10      1.  Plaintiff, a pretrial detainee, was housed at the Sacramento County Jail from April 28,

11  2012, through September 11, 2013, a period of 501 days, or about 16.5 months.  (ECF No. 43-6 at

12  3.)  All further references to cells are to cells located within the Sacramento County Jail.

13      2.  Plaintiff did not file any message request or kite, grievance, or appeal of a grievance

14  concerning the events complained of in the instant complaint.   (ECF Nos. 1, ¶¶9-11; 43-6 at 29-

15  33 (grievances); 43-6 at 36-58 (kites).)

16      3.  In his complaint and at his deposition, plaintiff states he made verbal requests for

17  grievances, but the deputies at the jail would not provide grievances "for the back flushing

18  problem" in particular.  He testified that "They never gave me no [sic] grievance forms or

19  anything like that."  (ECF No. 1, ¶¶9-11; Pl.'s Dep. at 30-31.)

20      4.  In his deposition, plaintiff testified that he did not ever file any grievance about any

21  other issues at the Main Jail (Pl.'s Dep. at 31-32), and in response to his verbal complaints he was

22  told not to "press the button" for cell emergencies (Pl.'s Dep. at 19).

23      5.  Plaintiff testified that he knows what a kite is, but he did not recall ever writing a kite

24  to officials.  (Pl.'s Dep. at 30-31.)

25      6.  Plaintiff does not recall any names of any deputies who allegedly refused his requests

26  for grievance forms.  (Pl.'s Dep. at 25.)

27  —————————————————

28  [2]  For purposes of summary judgment, the undersigned finds these facts are undisputed, unless otherwise indicated.

3

7.  In his verified complaint, plaintiff alleged that "every time the adjoining cell would flush their toilet, the raw sewage" would rise up in his Sacramento Main Jail cell toilet and at times splash on the seat and floor, creating unsanitary conditions.  (ECF No. 1.)

8.  In his deposition, plaintiff testified that water splashed onto the toilet without overflowing "12, 14 times" per month, and further testified that water from the toilet would overflow onto the floor "eight or nine times . . . in one month."  (Pl.'s Dep. at 22-23.)

9.  Plaintiff testified that his "most" memorable toilet problems occurred while he was housed in "Six East 207."  (Pl.'s Dep. at 17.)

10.  There is no record of plaintiff being housed in cell 6 East 207.[3]  (ECF No. 43-6 at 3.)

11.  When housed in 3 East 207, plaintiff testified that the "same things" occurred where the water would rise up and overflow onto the floor when the neighbor flushed.  (Pl.'s Dep. at 24-25.)

12.  Plaintiff testified that when he was housed in 3 East Cell 218, the "same issues" occurred where the water would rise up and overflow onto the floor "about eight or nine times a month."  (Pl.'s Dep. at 26-27.)

13.  Defendant presented evidence that the Sacramento County Jail has a grievance procedure.  See Decl. R. Officer Lind in Supp. Def.'s Mot. Summ. J., filed January 18, 2017. (ECF No. 43-6.)  Any complaints or suggestions are directed to the Housing Floor Officer.  Floor officers make reasonable efforts to handle grievances "from the lowest level possible before sending it up the chain of command."  (ECF No. 43-6 at 15.)  If the inmate is dissatisfied with the response received at that level, he may request a "grievance/suggestion form" and file the completed form with the Housing Floor Officer.  (Id.)  If the grievance is regarding an officer, the grievance may be mailed directly to the Facility Commander as confidential mail.  Finally, an inmate may proceed to the final level of review by appealing from the response to the written grievance, which is decided by the Division Commander.  (ECF No. 43-6 at 16.)

////

---

[3]  In his unverified opposition, plaintiff claims he erred in saying 6 East, he should have said 6 West.  (ECF No. 49-2 at 3.)

14. Defendant provided the declaration of Sgt. Feil concerning the practice of providing grievance forms to inmates at the Sacramento County Main Jail. (ECF No. 43-5.) Pursuant to policy, custody staff provides every main jail inmate with an orientation handbook, which contains specific information on grievance procedures, prisoner message request forms or "kites," as well as other rules and services. Inmates are informed that grievances involving specific occurrences or incidents must be filed within a few days after the occurrence. An inmate may file a grievance as to cell conditions, such as broken fixtures, and regarding staff conduct. The handbook states that "grievances regarding officer conduct may be mailed directly to the Facility Commander as confidential mail." (ECF No. 43-5 at 3.) In Sgt. Feil's experience and training, the floor officer must accept completed inmate grievance forms pertaining to conditions of confinement, which may include cell conditions such as an overflowing toilet. (ECF No. 43-5 at 3.)

15. Message request forms or "kites" are available in the housing day rooms or may be obtained from the pod worker or floor officer. Kites are less formal written requests than grievances. "If an inmate does not have success with filing a grievance for whatever reason, a kite may be another option to resolve his or her issue." (ECF No. 43-5 at 3.)

16. The orientation handbook does not identify any category of inmate complaint as "non-grievable." (Id.) The only limit is that inmates are cautioned against filing "excessive" grievances of matters which have already been resolved. In order to file a grievance for a cell plumbing problem, inmates must first request the grievance forms from the floor officer, who must accept completed inmate grievance forms pertaining to conditions of confinement.

17. Sacramento County Sheriff's Department records reflect plaintiff filed two grievances: (1) one dated 8/11/12, seeking refund for $5 phone time charges; (2) second dated 10/23/12, complaining of proximity to another inmate during court processing. (ECF No. 43-6 at 3, 30-33.)

18. The custody file of plaintiff, kept in the records of the Sacramento County Sheriff's Department in the normal course of business, contains over 20 message requests or kites from plaintiff to sheriff's personnel from 4/28/12 through 9/11/13. (ECF No. 43-6 at 3, 34-58.)

19.  Cells are equipped with call buttons for health emergencies.  If a toilet was actively overflowing and flooding the cell, then one of the inmates could use the call button to summon help for the emergency.[4]  (ECF No. 43-5 at 4.)

20.  Defendant provided the declaration of Alan Hobday, who has been employed as a plumber with the County of Sacramento for 21 years.  (ECF No. 43-4.)  Hobday is the "Downtown Plumbing Lead," responsible for ensuring the maintenance and repair of the plumbing systems of several County buildings, including plumbing at the Sacramento County Main Jail.  Hobday personally responds to and supervises the completion of all work orders from the Sacramento County Sheriff's Department involving plumbing at the Sacramento Main Jail.  (ECF No. 43-4.)

21.  If an inmate has a cell plumbing issue, the inmate can make a formal or informal complaint to custody staff, such as a floor officer; the officer passes the inmate complaint up the chain of command; the Sheriff's Department creates a work order and forwards the order to the Department of General Services.  (ECF No. 43-4.)  Hobday receives such work orders by email, and he checks his email for work orders every day, Monday through Friday.  There is an electronic "paper trial" for all work orders, and Hobday receives and documents the resolution of the work orders.  (Id.)

22.  The Sacramento Main Jail has about 1200 cells.  (ECF No. 43-4 at ¶ 6.)  The complaint of toilet "back flushing" in the Main Jail is an unusual complaint which Hobday receives and handles about once per year.  Toilet pipes to adjoining cells are connected by a Zurn 90 degree no-hub fitting.  Back flushing can be a result when there is blockage at the top of the adjoining pipes.  When such blockage occurs, the water may raise up and possibly "back flush" or overflow in one cell when the adjoining cell flushes.  (Id.)

23.  Cells located next to showers do not share common plumbing systems with any neighboring cell.  (ECF No. 43-4 at ¶ 7.)  It is impossible for a cell adjoining a shower to have a back flushing problem or to overflow as a result of a neighbor flushing, because the toilet pipes of

---

[4]  In his unverified opposition, plaintiff claims he was told not to use the call button to request cleaning supplies or unless the whole cell is flooded.  (ECF No. 49-2 at 8.)

such cells do not connect with any adjacent cells.  (Id.)

24.  In his deposition, plaintiff testified that two out of three of his assigned cells which he mostly recalled having back flushing problems were located next to showers:

> Q:  Do you know with any of the three cells that we've talked about so far, were any of those next door to the showers?
>
> [Moak]:  Yes, ma'am . . . 207, the 207s, both of them.
>
> Q:  Okay.  And that applies to both Six East 207 and Three East 207?
>
> [Moak]:  Yes, ma'am.

(Pl.'s Dep. at 29-30.)

25.  Main Jail cells identified as 6 West 212 and 3 East 207 are adjacent to showers.  (ECF No. 43-4 at ¶ 8.)  Cells 6 West 212 and 3 East 207 have never had a back flushing problem as a result of a neighbor flushing, because these cells' toilet pipes do not connect with any adjacent cells.  (Id.)

26.  Hobday searched County General Services files and records for plumbing work orders, and found the following:

a.  For cell 3 East 207, for the period January 2013 through February 2013, a work order for 3 West 207 involving low water pressure, but no record of toilet problems or sewer main line flooding.  (ECF No. 43-4 at ¶ 10.)

b.  For cell 3 East 218, for the period March 2013 through September 2013, two work orders for faucet repairs only, but no record of toilet problems or sewer main line flooding.  (ECF No. 43-4 at ¶ 9.)

c.  For cell 6 West 212, for the period September 2012 through January 2013, no record of toilet problems or sewer main line flooding.  (ECF No. 43-4 at ¶ 11.)

27.  The County of Sacramento Sheriff's Department maintains a policy for cleaning of the mail jail, entitled "Facility Sanitation and Cleanliness."  (ECF No. 43-6 at 1, 6-8.)  Inmates are not permitted to store cleaning supplies and equipment in their cells.  Cleaning supplies are kept in secured areas, and are not readily accessible by inmates.  Designated inmate cleaning crews may have access to cleaning supplies and equipment only while under the direct

1  supervision of custody staff.  Inmate cleaning crews may be directed to clean designated areas

2  including floors on a weekly basis, or as otherwise scheduled by the floor officer or custody staff.

3  (ECF No. 43-5 at 4.)

4       28.  The declarations of Sgt. Feil and Hobday address the abuse of the jail's plumbing

5  system by inmates.  Sgt. Feil states that inmates empty toilets and use the pipes to amplify

6  conversation with other inmates, and "fish" to send contraband through the pipes via the toilets.

7  (ECF No. 43-5 at 4.)  Until recently, it was not unusual for an inmate to wage a personal protest

8  by blocking the toilet and flooding the tier -- such incidents of misuse have gone down with the

9  installation of flush meters.  (Id.)  Hobday identified this blocking and flooding abuse as

10  "parachuting," where inmates intentionally block the main line in between floors, and then

11  repeatedly flush to cause flooding havoc to the floors below.  (ECF No. 43-4 at 4.)  To address

12  this "parachuting," flush meters are being installed in the Main Jail.  The new flush meter project

13  is partially completed.  (Id.)

14  V.  Defendant's Motion for Summary Judgment

15       Defendant moves for summary judgment on the grounds that plaintiff failed to exhaust his

16  administrative remedies, cannot demonstrate a constitutional violation occurred, and presented no

17  evidence of a county policy or practice contributing to a violation of the Fourteenth Amendment.

18  After being granted an extension of time, plaintiff filed his opposition on April 12, 2017.  (ECF

19  No. 49.)  Despite his reference to the declaration of himself and other inmates, "C., Mosqueda,

20  and Rodriguez" (ECF No. 49-2 at 3), as well as citing defendant's responses to a request for

21  admissions, (ECF Nos. 49, 49-1, 49-2, 49-3), plaintiff provided no such documents or

22  declarations in support of his opposition.  (Id.)  After receiving an extension of time, defendant

23  filed a reply on May 15, 2017.  (ECF No. 52.)

24  VI.  Legal Standard for Summary Judgment

25       Summary judgment is appropriate when it is demonstrated that the standard set forth in

26  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

27  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

28  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

9

1  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

2   (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

3  1564, 1575 (9th Cir. 1990).

4          In the endeavor to establish the existence of a factual dispute, the opposing party need not

5  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

7  trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

8  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

9  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

10  amendments).

11          In resolving a summary judgment motion, the court examines the pleadings, depositions,

12  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

13  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

14  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

15  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa

16  County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not

17  drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

18  which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,

19  1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a

20  genuine issue, the opposing party "must do more than simply show that there is some

21  metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

22  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

23  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

24          By contemporaneous notice provided on January 18, 2017 (ECF No. 43-1), plaintiff was

25  advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

26  Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

27  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

28  ////

1  VII.  Exhaustion of Administrative Remedies

2      A.  Exhaustion Standards

3        The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

4  brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

5  prisoner confined in any jail, prison, or other correctional facility until such administrative

6  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion

7  requirement applies to all inmate suits about prison life, whether they involve general

8  circumstances or particular episodes, and whether they allege excessive force or some other

9  wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

10        Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731,

11  741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

12  critical procedural rules[.]"  Woodford, 548 U.S. at 90.  The Supreme Court has also cautioned

13  against reading futility or other exceptions into the statutory exhaustion requirement.  See Booth,

14  532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy

15  the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective

16  administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.  "[T]o properly exhaust

17  administrative remedies prisoners 'must complete the administrative review process in

18  accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but

19  by the prison [or jail] grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting

20  Woodford, 548 U.S. at 88).

21        Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Bock,

22  549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[5]

23  "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),]

24  should provide the template for the burdens here."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

25  2014) (en banc) (hereafter "Albino").  A defendant need only show "that there was an available

26      ————————————
   [5]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a]

27  defendant's burden of establishing an inmate's failure to exhaust is very low."  Id. at 1031.
Relevant evidence includes statutes, regulations, and other official directives that explain the

28  scope of the administrative review process.  Id. at 1032.

1   administrative remedy, and that the prisoner did not exhaust that available remedy." <u>Albino</u>, 747

2   F.3d at 1172.  Once the defense meets its burden, the burden shifts to the plaintiff to show that the

3   administrative remedies were unavailable.  <u>See Albino</u>, 747 F.3d at 1172; <u>Draper v. Rosario</u>, 836

4   F.3d 1072, 1080 (9th Cir. 2016) (inmate did not meet his burden when he failed to identify any

5   actions prison staff took that impeded his ability to exhaust his administrative remedies, or

6   otherwise explain why he failed to comply with the administrative remedies process).  The

7   ultimate burden of proof, however, remains with the defendant.  <u>Id.</u>

8        If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

9   failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

10  <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1120, <u>overruled on other grounds by</u> <u>Albino</u>, 747 F.3d 1162.

11  On the other hand, "[i]f the district judge holds that the prisoner has exhausted available

12  administrative remedies, that administrative remedies are not available, or that a prisoner's failure

13  to exhaust available remedies should be excused, the case may proceed to the merits."  <u>Albino</u>,

14  747 F.3d at 1171.

15       B.  <u>Discussion</u>

16            1.  <u>Did plaintiff exhaust?</u>

17       Here, it is undisputed that (a) the Sacramento County Jail provides inmates with an

18  orientation handbook that contains specific information concerning available grievance

19  procedures, and prisoner message request forms or "kites"; (b) plaintiff filed grievances and kites

20  while he was housed at the Sacramento County Jail; (c) plaintiff did not file any grievance or kite

21  concerning the instant claims while housed at the Sacramento County Jail.  Such undisputed facts

22  establish that plaintiff did not exhaust his administrative remedies prior to filing this action.

23  Thus, the burden shifts to plaintiff to come forward with evidence "showing that there is

24  something in his particular case that made the existing and generally available administrative

25  remedies effectively unavailable to him."  <u>Albino</u>, 747 F.3d at 1172.

26            2.  <u>Were the remedies available?</u>

27       In his unverified opposition, plaintiff claims the back flushing problem persisted during

28  his entire 501 day incarceration at the jail, and claims that he and three other former jail inmates

"routinely" each made requests to floor officers for grievances for the back flushing and lack of cleaning supplies. (ECF No. 49-1 at 11-12.) Plaintiff claims none of them received any cleaning supplies the entire time they were housed at the jail. (Id. at 12.) Plaintiff recounts a list of responses floor officers gave when asked for a grievance for both issues, including, "I'll get you later," "I forgot, get you on next go around," "The only thing you can get is a plunger," "It's not a grievable issue," "Ask the next shift," "Oh, well, don't come to jail," "Oh, I don't have time," "It's not a medical emergency, don't ask me," and "It's just the way the plumbing system is." (Id. at 13.) Plaintiff states that grievance forms are to be used for facility policy, that floor officers commonly ask inmates why they are requesting a grievance, and will attempt to resolve the grievance before sending it up the chain of command. Plaintiff claims that kites are used for requesting information, obtaining forms, or requesting certain jail programs or services, but "does not state to use form to request cleaning supplies or report plumbing issues." (Id. at 14.) He alleges that the call button is only for emergencies, not to be used for questions, and that a housing officer told plaintiff that unless it's a medical emergency, do not press the button. (Id. at 14.) In his unverified opposition to defendant's statement of undisputed facts, plaintiff states that he "was told not to use the call button to request cleaning supplies or unless the whole cell is flooded." (ECF No. 49-2 at 8.) He also claimed it was easy to get grievances for issues unrelated to deputies' duties or how the facility was built. (ECF No. 49-2 at 4.)

The Supreme Court recently reiterated that "all inmates must now exhaust all available remedies," and district courts must apply this statutory requirement. Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). Thus, there is no "special circumstances" exception to the PLRA's rule of exhaustion. Id. That said, the PLRA does provide one textual exception by its use of the term "available," meaning "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" Id., quoting Booth, 532 U.S. at 737-38. The Court identified three circumstances that can render a prison or jail grievance process unavailable, but noted "we expect that these circumstances will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted).

> First, an administrative procedure is unavailable when . . .it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . Next, an

13

administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. . . . And finally, [a grievance process is rendered unavailable] when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Ross, 136 S. Ct. at 1859-60.  For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable.  Albino, 747 F.3d at 1172-73; see also McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable.").

Here, because plaintiff's opposition is not signed under penalty of perjury, and he has submitted no declaration or affidavit in support of his contentions, plaintiff's bare allegations in the opposition are insufficient to defeat defendant's properly supported motion for summary judgment.  See Anderson, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial"); see also Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.").  Plaintiff is required to proffer evidence that he did, in fact, attempt to obtain, file or submit a grievance; he cannot avoid summary judgment with mere conclusory assertions.  In other words, if a prisoner could simply declare that unidentified deputies refused to provide a grievance form and told plaintiff the issue was not grievable, without providing any supporting facts or evidence, any prisoner could avoid exhausting administrative remedies by simply making such bald statements.  In Draper, the Ninth Circuit dismissed the prisoner's "unsupported allegations" that prison officials "prohibited and impeded" efforts to exhaust because such allegations were "insufficient to create a triable issue of material fact," and the prisoner failed to rebut evidence of non-exhaustion.  Id., 836 F.3d at 1080; see also

14

1    Millner v. Biter, 2017 WL 735688 (E.D. Cal. Feb. 24, 2017) (remedies remained available where

2    inmate failed to show he "took all reasonable and appropriate steps in presenting the grievance in

3    a timely manner, or that any officials' failure to respond to it occurred not through his own fault,

4    and there was no evidence that prison official engaged in any misconduct regarding plaintiff's

5    ability to exhaust administrative remedies.)

6            Although plaintiff maintains that unidentified deputies denied plaintiff a grievance, and

7    some unidentified deputies told him the issue was not grievable, plaintiff adduced no evidence

8    identifying who the deputies were, and failed to provide dates or times that might assist in

9    identifying such individuals.  For example, in Williams, the inmate provided specific details:

10                   Williams alleged in her complaint that she first tried informing
                     Officer Paramo about the facts alleged in her complaint, but that he
11                   did not help her and told her, "So what! That is not my problem!
                     That is your problem!" [Footnote omitted.] She then attempted to
12                   file a grievance and an appeal on January 5, 2012 with Officer
                     Cobb, who rejected the grievance and refused to file the appeal.
13

14    Williams v. Paramo, 775 F.3d 1182, 1191-92 (9th Cir. 2015).  Here, plaintiff provides no such

15    specific details.  Two cases in the Seventh Circuit demonstrate how an inmate can show such

16    remedies are not available.  In Dale, the inmate submitted an affidavit setting forth his fruitless

17    efforts to obtain grievance forms and identifying the persons from whom he had tried to obtain

18    them.  Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004).  The inmate stated that the on-duty

19    officer from whom he requested grievance forms gave him blank sheets of paper instead; his

20    counselor and case manager told him that they did not have the forms and that he should obtain

21    them from his unit team; and the unit team members made no response to his repeated requests

22    for the forms.  Dale, 376 F.3d at 655-56.  Similarly, in Kaba, the inmate offered evidence that the

23    guard against whom he was trying to file a grievance denied him the necessary forms, and

24    instigated other inmates to assault him.  Kaba v. Stepp, 458 F.3d 678, 683-86 (7th Cir. 2006).

25    Specifically, Kama submitted "three sworn affidavits proffering his own testimony, a prison-

26    administered lie detector test that indicates that he was truthful in the first affidavit, the affidavit

27    of another inmate, and the documentation by a doctor of Kaba's reported fears about being

28    transferred back to Marion."  Id., at 682.

By contrast, plaintiff provided no such detailed factual allegations or affidavits.  It appears plaintiff was attempting to obtain declarations from other jail inmates to support his claims, but plaintiff failed to provide any such declaration, including his own.  Other than plaintiff's conclusory statement that he asked for a grievance and unidentified floor officers would not give him one, there is no evidence in this case that provides details concerning the alleged denials, or whether he took additional steps to attempt to exhaust his remedies, for example, filing a grievance against the officer who allegedly refused to provide a grievance.  Sgt. Feil declared that grievances can be filed as to custody staff who allegedly fail to provide grievances.  (ECF No. 43-5 at 4.)  Plaintiff does not state he tried to elevate his request to a supervisor.  The orientation handbook provides that grievances regarding officer conduct may be mailed directly to the Facility Commander as confidential mail.  (ECF No. 43-6 at 16.)  Plaintiff does not state that he wrote to the Facility Commander to complain that a specific deputy refused to provide a grievance form concerning the issues of back flushing or access to cleaning supplies.

In his verified complaint, plaintiff averred that "deputies would never give us grievances," but defendant provided copies of two grievances filed by plaintiff.  (ECF No. 43-6 at 30 (August 11, 2012, regarding $5 phone charge); 43-6 at 32 (October 23, 2012, regarding a failure to house plaintiff separate from his co-defendant).)  These grievances demonstrate that plaintiff was aware of, and knew how to use, the appeals process, and was provided grievances on at least two occasions.

In his deposition, plaintiff could not recall whether he had ever filed a kite, but defendant produced 23 kites that plaintiff authored from April 28, 2012, through September 11, 2013.  (ECF No. 43-6 at 36-58.)  In his complaint, plaintiff claims he made written requests that received no response, but he provided no copies of such written requests.  Also, the orientation handbook states that all questions to floor officers should be submitted on a message request or kite form.  (ECF No. 43-6 at 14.)  The message request or kite forms do not limit or list the types of requests that can be made; rather, the message section contains four blank lines.  Therefore, plaintiff could have filed a kite requesting (a) assistance with the back flushing, (b) a grievance form for the back flushing issue, or (c) cleaning supplies.  Indeed, plaintiff submitted kites requesting a Bible,

16

1    a calendar, and daily bread (ECF No. 43-6 at 46, 48-53).  Moreover, in his August 11, 2012

2    grievance concerning the phone charge, plaintiff wrote that Aramark told plaintiff that he had to

3    write a kite or grievance about the issue.  (ECF No. 43-6 at 30.)  This suggests that either kites or

4    grievances could be used to raise issues at the jail.  Sgt. Feil's declaration confirms this view:  "If

5    an inmate does not have success with filing a grievance for whatever reason, a kite may be

6    another option to resolve his or her issue.  Kites are less formal written requests than grievances."

7    (ECF No. 43-5 at 3.)  It is undisputed that plaintiff submitted no kites concerning the back

8    flushing or his request for cleaning supplies.

9         Similarly, plaintiff fails to support his statement that unidentified deputies told plaintiff

10   the back flushing issue was not grievable; he adduced no facts or evidence as to the identity of

11   such deputies, or as to the time and place any such statement was made.  On the other hand,

12   defendant provided evidence that the handbook does not limit grievances in this way, and

13   nonparty Sgt. Feil declares that no category of inmate complaints is non grievable.  (ECF No. 43-

14   5 at 3.)  Rather, the only limit on grievances is where inmates are cautioned against filing

15   "excessive" grievances of matters already resolved.  (Id.)  Further, Sgt. Feil declares that in his

16   experience and knowledge, "there is no policy nor practice of denying grievances to inmates

17   complaining of broken toilets or other similar cell conditions," and that "[a]n unworkable or

18   overflowing toilet is not classified as "non-grievable," either formally or informally."  (ECF No.

19   43-5 at 3.)  Plaintiff fails to rebut such evidence with competent evidence of his own.  Plaintiff's

20   unsupported assertions cannot be considered as evidence; thus, he fails to demonstrate a triable

21   issue of material fact exists.

22        In addition, plaintiff's statements in his deposition are insufficient to show that the

23   grievance procedure was "unavailable" to him.  Plaintiff fails to identify when, where, or who

24   allegedly denied plaintiff a grievance form, or allegedly told plaintiff that the alleged back

25   flushing issue was not a "grievable issue."  Thus, plaintiff has not shown that the jail's

26   administrative process was not available to him.  Plaintiff fails to submit any document showing

27   that he put jail staff on notice of an alleged persistent back flushing problem or lack of cleaning

28   supplies.  Similarly, he fails to describe or demonstrate what other steps he took to exhaust the

1   instant issues.

2       Accordingly, plaintiff has failed to demonstrate that he should be excused from exhausting

3   administrative remedies.  Plaintiff cannot avoid summary judgment with mere conclusory and

4   unsupported assertions, which are insufficient to create a triable issue of material fact on the issue

5   of exhaustion.  Plaintiff has failed to carry his burden to demonstrate that the existing and

6   available administrative remedies at the Sacramento County Jail were not available to him.

7   Therefore, the undersigned recommends that the pending motion be granted on the grounds that

8   plaintiff failed to exhaust his administrative remedies prior to filing the instant action.  Under the

9   PLRA, plaintiff's failure to pursue and exhaust his administrative remedies mandates dismissal of

10  his action without prejudice.  See Wyatt, 315 F.3d at 1120 (the proper remedy for failure to

11  exhaust nonjudicial remedies is dismissal without prejudice).

12  VIII.   Fourteenth Amendment Claim

13      But even assuming, *arguendo*, that plaintiff's verified statements that unidentified

14  deputies refused to provide a grievance form and told him the issue was not grievable, standing

15  alone, are sufficient to raise a triable issue of material fact as to exhaustion, plaintiff failed to

16  adduce competent evidence that while he was housed at the Sacramento Jail, without cleaning

17  supplies, he was subject to a prolonged and pervasive back flushing problem, that constituted a

18  policy in violation of plaintiff's constitutional rights.

19      A.   Fourteenth Amendment -- Conditions of Confinement -- Pretrial Detainees

20      Inmates who sue jail officials for injuries suffered while in custody may do so under the

21  Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the

22  Fourteenth Amendment's Due Process Clause.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979)

23  (holding that, under the Due Process Clause, a detainee may not be punished prior to conviction).

24  Whether an inmate's claim arises under the Eighth Amendment or Fourteenth Amendment he

25  "must show that the prison officials acted with deliberate indifference."  Castro v. County of Los

26  Angeles, 833 F.3d 1060, 1068 (9th Cir. 2016) (internal citation and quotation omitted).  The tests

27  for identifying deliberate indifference are, however, different under these respective clauses.  The

28  Eighth Amendment test contains a subjective component, whereas the Fourteenth Amendment

1  test is "purely objective."  Id. at 1067-68, 1070-71 (discussing, *inter alia*, Kingsley v.

2  Hendrickson, 135 S. Ct. 2466 (2015)[6]).

3      Because plaintiff was a pretrial detainee at the time of these events, he was entitled to be

4  free from conditions that amount to punishment.  See Bell, 441 U.S. at 533-37; Demery v.

5  Arpaio, 378 F.3d 1020, 1028-30 (9th Cir. 2004).  If he were convicted, he would be entitled to be

6  free from conditions that constitute cruel and unusual punishment.  Farmer v. Brennan, 511 U.S.

7  825, 832 (1994).  In both cases, the alleged conditions must be objectively serious enough to

8

---

9  [6]  In Kingsley, the Supreme Court clarified the applicable standards governing pretrial detainees'

10  excessive force claims under the Fourteenth Amendment, holding that a pretrial detainee "must
    show only that the force purposely or knowingly used against him as objectively unreasonable"

11  rather than prove "a subjective standard that takes into account a defendant's state of mind."  Id.
    at 2472-73.  In Castro, the Ninth Circuit extended Kingsley "to failure-to-protect claims brought

12  by pretrial detainees against individual defendants under the Fourteenth Amendment."  Id., 833
    F.3d at 1070.  However, in the failure-to-protect context, the Ninth Circuit found additional

13  analysis was required, identifying the required elements as:  (1) the defendant made an intentional
    decision with respect to the conditions under which the plaintiff was confined; (2) those

14  conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not
    take reasonable available measures to abate that risk, even though a reasonable officer in the

15  circumstances would have appreciated the high degree of risk involved -- making the
    consequences of the defendant's conduct obvious; and (4) by not taking such measures, the

16  defendant caused the plaintiff's injuries.  Id. at 1071 (footnote omitted).

17      One district court in California discussed the unsettled question of whether Kingsley's new
    standard also applies to unconstitutional conditions of confinement claims.  King v. County of

18  Los Angeles, 2016 WL 6902097 at *8 (C.D. Cal. Oct. 7, 2016).  Subsequently, another district

19  court held that in light of Castro, "a pretrial detainee need no longer allege 'deliberate
    indifference' to satisfy the objective prong, . . . but need only allege that defendants engaged in

20  'objectively unreasonable' conduct."  Osegueda v. Stanislaus County Public Safety Center, 2017
    WL 202232 *5 (E.D. Cal. Jan. 17, 2017).  Other courts have extended Kingsley to general

21  conditions of confinement claims.  Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) (extending

22  Kingsley to conditions of confinement claims by pretrial detainees under the Fourteenth
    Amendment); Daly v. New York City, 2017 WL 2364360 *4 (S.D. N.Y. May 30, 2017) (pretrial

23  detainee must show objectively that a reasonable person should have known of the risk of
    deprivation); Eaves v. El Paso County Board of County Commissioners, 2017 WL 1243013 (D.

24  Col. March 24, 2017) ("for pretrial detainees, in the absence of express intent to punish, the
    deliberate indifference standard may also be met by 'showing that the actions are not 'rationally

25  related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in
    relation to that purpose.'")  In Eaves, the judge explained that the Kingsley Court used broad

26  language in its holding, did not limit the holding to excessive force, and premised its holding on

27  Bell, a conditions of confinement case.  Eaves, 2017 WL 1243013 at *6.

28      Here, because plaintiff sues only the entity, Sacramento County, an objective standard applies.
    Castro, 833 F.3d at 1076.

amount to a constitutional deprivation.  Where an entity is the defendant, it is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury, but must also demonstrate that the custom or policy was adhered to with "deliberate indifference to the constitutional rights of [the jail's] inhabitants."  City of Canton, Ohio, v. Harris, 489 U.S. 378, 392 (1989).

The Constitution does not mandate "that prisons be comfortable" or "that they provide every amenity that one might find desirable."  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  But the Constitution will not permit inhumane jail conditions.  See Farmer, 511 U.S. at 832.  Jail "officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred.  'The more basic the need, the shorter the time it can be withheld.'"  Id. (citation omitted).

B. Monell Liability

Local government entities may be sued directly under Section 1983 when their policies or customs are the moving force behind a constitutional violation.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978).  However, a local government entity may not be held liable under a theory of respondeat superior for the actions of its subordinates.  Id.  Rather, to establish liability for governmental entities under Monell, "a plaintiff must prove (1) that [he] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quotation marks omitted).

C. Discussion

1. Widespread Custom or Practice?

First, and importantly, defendant adduced unrefuted evidence from Sacramento County's experienced plumber who states that although back flushing can result when there is blockage at the top of the adjoining pipes, the complaint of back flushing in the main jail is unusual, and the

plumber receives and handles approximately one a year in a facility with 1200 cells.  (ECF No. 43-4 at 3.)  The experienced plumber did not identify a plumbing design or equipment problem as the cause of such back flushing incident, but rather as a "result when there is blockage at the top of the adjoining pipes."  (Id.)  In addition, nonparty Sgt. Feil declared that he has "never witnessed cell mates remaining housed in a cell where the toilet overflowed repeatedly and was never repaired."  (ECF No. 43-5 at 4.)  These undisputed facts distinguish plaintiff's case from Bodnar -- in Bodnar, it was undisputed that both the Southwest Detention Center and the Robert Presley Detention Center suffered from a plumbing defect in which, when an inmate flushed his toilet, the waste water back flushed into the adjoining cell's toilet.  Id., 2014 WL 2737815 at *3, 9.  In the instant action, there is no evidence of such a plumbing defect, and defendant denies a widespread back flushing problem existed, and provides evidence that it does not.

Absent a formal policy, plaintiff must show "'the existence of a widespread practice . . . that is so permanent and well settled as to constitute a "custom or usage" with the force of law.'" See Gillette v. Delmore, 979 F.2d 1342, 1348-49 (9th Cir. 1992) (per curiam) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).  Such custom may be "inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded."  Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1233-34 (9th Cir. 2011) (quoted sources and internal quotation marks omitted).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).  Because the deliberate indifference standard for municipalities is an objective inquiry, Castro, 833 F.3d at 1076, deliberate indifference occurs when the need for more or different action is "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, 489 U.S. at 390.

Here, plaintiff provided no declarations by himself or other inmates attesting to a widespread back flushing problem at the Sacramento County Jail, and supported by detailed facts

as to whom plaintiff or other inmates reported the problem, and the deputy's specific response to each report.  Plaintiff must produce "specific evidence, through affidavits or admissible discovery material, to show that [a] dispute exists," and that there is a genuine issue for trial.  Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Fed. R. Civ. P. 56(e).  Defendant adduced evidence that while back flushing can occur, back flushing is unusual, and defendant has a process in place to address such plumbing issues, as well as a policy governing jail sanitation. Because plaintiff failed to rebut defendant's evidence with competent evidence demonstrating such a widespread custom or practice existed, plaintiff fails to demonstrate a triable issue of material fact exists as to whether defendant had a custom or practice of allowing a persistent and pervasive back flushing problem to exist at the jail.

2. <u>Where Did Alleged Back Flushing Occur?</u>

Second, defendant provided unrefuted evidence that cells next to showers do not share plumbing with another cell; therefore it is impossible for back flushing to occur in those cells. (ECF No. 43-4 at 3.)  In his deposition, plaintiff testified that two out of three of his assigned cells that he alleged had back flushing problems were located next to showers.  (Pl.'s Dep. at 29-30, citing cells 6 East 207 and 3 East 207.)  Housing records reflect plaintiff was housed in cell 3 East 207A for five days, and there is no record of plaintiff being housed in cell 6 East 207 from April 28, 2012, through September 11, 2013.  (ECF No. 43-6 at 3.)  The plumber also declared that cell 6 West 212 is adjacent to a shower.  (ECF No. 43-4, para 8.)  Plaintiff was housed in 6 West 212 from September 13, 2012, to September 22, 2012, and from September 27, 2012, to January 13, 2014, a total period of over four months.  Thus, despite plaintiff's deposition testimony, it was impossible for cells 3 East 207A and 6 West 212, both located next to showers, to suffer back flushing because such cells do not share pipes with another cell.[7]

Contrary to plaintiff's verified complaint, where he claimed he was housed in cell 207 for four to five months and then cell 218 for the remainder of his jail housing, housing records reflect

---

[7]  In addition, the plumber declared that there was no record of toilet problems or sewer main line flooding in cells 3 East 207 or 6 West 212 for the periods January 2013 through February 2013, and September 2012 through January 2013, respectively.  (ECF No. 43-4 at 4.)

plaintiff was housed in cell 3 East 207A for five days, and in cell 3 East 218A for just over seven months. (ECF No. 43-6 at 3.) Indeed, defendant provided housing records demonstrating that plaintiff was housed in 20 different cells from April 28, 2012, through September 11, 2013. (ECF No. 43-6 at 3.) In his unverified opposing papers, plaintiff concedes he was housed in 20 different cells. (ECF No. 52-1 at 11.) In his unverified opposition papers, plaintiff adduced no competent evidence that he suffered prolonged or pervasive back flushing issues in such other cells for the five and a half months he was not housed in a shower-adjacent cell or in cell 3 East 218.

These undisputed facts leave only cell 3 East 218, where plaintiff was housed for seven months. The plumber searched County General Services files and records for plumbing work orders concerning cell 3 East 218 for the time period March through September, 2013, and found only two work orders, both for faucet repairs. (ECF No. 43-4 at 4.) There was no record of toilet problems or sewer main line flooding in Cell 3 East 218 from March to September of 2013. (Id.) Plaintiff adduced no evidence to support his deposition testimony approximating that his toilet overflowed onto the floor about eight or nine times a month during the seven months he was housed in Cell 3 East 218, or to refute defendant's evidence to the contrary. Plaintiff submitted no affidavits of his own or by other inmates to suggest defendant maintained a custom or practice of allowing the back flushing problem to occur in Cell 3 East 218 while denying plaintiff cleaning supplies. Thus, plaintiff fails to show a triable issue of material fact exists as to whether defendant had a custom or practice of allowing a back flushing problem to exist in Cell 3 East 218 while plaintiff was housed there.

But even assuming that while housed in Cell 3 East 218, plaintiff's constitutional rights were violated based on the back flushing incidents identified by plaintiff in his deposition, plaintiff fails to demonstrate that such violation was the result of a widespread practice or custom and that such custom was the moving force behind the violation. Plaintiff submitted no documents demonstrating he put jail officials on notice of a persistent back flushing problem in Cell 3 East 218. As noted above, plaintiff adduced no evidence of other incidents of alleged back flushing at the jail. Without more, such incidents in Cell 3 East 218 do not rise to the level of a

1    <u>Monell</u> violation.

2          3. "<u>Parachuting</u>"

3          Third, the plumber declared that a more common plumbing issue known as "parachuting,"

4    occurs with main line flooding, when inmates on higher level floors intentionally block the main

5    line in between floors, and then repeatedly flush to cause flooding to the floors below.  (ECF No.

6    43-4 at 4.)  In order to address this issue, flush meters are being installed in the main jail, which

7    project is partially completed.  (<u>Id.</u>)  In any event, plaintiff's underlying allegations were not

8    based on "parachuting," and plaintiff adduced no competent evidence that he was subject to such

9    practice.  Moreover, the fact that flush meters are being installed to address this problem

10   demonstrates that prison officials do not have a custom or practice permitting such "parachuting."

11         4. <u>Conclusion</u>

12         For all of the above reasons, plaintiff failed to demonstrate that a triable issue of material

13   fact exists as to whether back flushing was a prolonged and pervasive problem at the Sacramento

14   County Jail, or whether defendant maintained a custom of allowing a back flushing problem to

15   exist while denying cleaning supplies.  Because plaintiff failed to adduce competent evidence

16   demonstrating a triable issue of material fact exists, defendant is entitled to summary judgment.

17   IX. <u>Conclusion</u>

18         Accordingly, IT IS HEREBY ORDERED that defendant's evidentiary objections are

19   partially sustained (ECF No. 52-3); the court strikes all of plaintiff's references to the declarations

20   of plaintiff, jail detainee Rodriguez, and jail inmate Mr. Mosqueda, and defendant's response to

21   admissions because they were not submitted with plaintiff's opposition.

22         IT IS RECOMMENDED that:

23         1. Defendant's motion for summary judgment (ECF No. 43) be granted, and

24         2. This action be dismissed without prejudice.

25         These findings and recommendations are submitted to the United States District Judge

26   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

27   after being served with these findings and recommendations, any party may file written

28   objections with the court and serve a copy on all parties.  Such a document should be captioned

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

2   objections shall be served and filed within fourteen days after service of the objections.  The

3   parties are advised that failure to file objections within the specified time may waive the right to

4   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5   Dated:  July 28, 2017

6

7   KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

8

9   /moak0640.msj.fte

25